[Civ. No. 1182. Third Appellate District.—October 3, 1913.]

## S. A. NORMAN, Appellant, v. C. P. HALL, Respondent.

BUILDING CONTRACT—IMPERFECT PERFORMANCE—RIGHT OF CONTRACTOR TO RECOVER DAMAGES FOR BREACH.—Where a building contractor put in a foundation which was defective in a substantial respect, and for that reason the owners refused to permit him to proceed with the work, he cannot recover damages for breach of the contract, although he contemplated putting in a new foundation, but did not because he received no assurance, in addition to that afforded by the original contract, that the second foundation would be accepted.

APPEAL from a judgment of nonsuit of the Superior Court of Alameda County. William H. Waste, Judge.

The facts are stated in the opinion of the court.

Aldrich & Gentry, for Appellant.

Abe P. Leach, and Harry E. Leach, for Respondent.

BURNETT, J.—This action was brought to recover damages claimed for the violation of a written contract for the construction of two certain buildings. Plaintiff proceeded no further than the completion of the foundation, but the basis of his action is that ''said defendant, without any cause or reason, requested and ordered plaintiff to stop said work and not to proceed further with said contract and to suspend work upon said contract; and said defendant did then and there stop said plaintiff from performing said conditions and said work, and refused to allow plaintiff to proceed further with said work.'' The appeal is from a judgment of nonsuit.

The ''articles of agreement'' under which the work was undertaken imposed upon plaintiff the duty to ''perform and complete in a workmanlike manner all the work required to conform with the plans and specifications designated,'' and it was provided that the services were to be ''under the direction and supervision and subject to the approval of'' the architect. The contract price was $15,842, to be paid in four installments, the first payment of three thousand nine hundred dollars to be made ''when the frames are completed and the roofs are sheathed.'' It was further agreed ''that when each payment or installment shall become due, and at the final completion of the work, certificates in writing shall be obtained from said architect, stating that the payment or installment is due or work completed as the case may be, and the amount then due; and the said architect shall at said time deliver said certificates under his hand to the contractor, or in lieu of such certificate, shall deliver to the contractor, in writing, under his hand, a just and true reason for not issuing the certificates, including a statement of the defects, if any, to be remedied to entitle the contractor to the certificate or certificates. And in the event of the failure of the architect to furnish and deliver said certificates, or any of them, or in lieu thereof the writing aforesaid, within three days after the times aforesaid, and after demand therefor made in writing by the contractor, the amount which may be claimed to

be due by the contractor, and stated in the said demand made by him for the certificate, shall at the expiration of said three days, become due and payable, and the owner shall be liable and bound to pay the same on demand.''

There can be no legal objection to said provisions and it is apparent that they bear a reasonable relation to the rights both of the owner and the contractor. It is equally clear that, in order to recover, plaintiff must show that he complied with said terms or offered a sufficient excuse for his failure to do so. (*Coplew* v. *Durand,* 153 Cal. 278, [16 L. R. A. (N. S.) 791, 95 Pac. 38], and cases therein cited.)

There is neither evidence nor contention here that plaintiff obtained the architect's certificate to the effect that any part of the work had been completed in accordance with the contract, or that any demand was made therefor, or that sufficient work had been done to entitle plaintiff to the first payment designated in the agreement, or that plaintiff performed his work as required by the said plans and specifications. Indeed, as to this last consideration, all the evidence shows that the foundation constructed by plaintiff was defective and unfitted for the purpose intended. It was not built in a workmanlike manner and it did not measure up to the requirement of the contract. It was defective not in a trifling but in a substantial respect and defendant was under no obligation, therefore, to accept or pay for it. The imperfect condition of the work was called to the attention of plaintiff and he did not gainsay it. In fact, there seems to have been no substantial difference of opinion as to the inadequacy of the work that had been completed.

This situation demands both legally and morally that plaintiff, in order to recover compensation or to place defendant in default so that an action for damages could be maintained, must remedy the defect and make the foundation conform to the specifications unless prevented from so doing by the act of defendant. But the evidence is that the defect was not cured and there is no showing that the failure was through any fault of defendant.

Plaintiff contemplated putting in a new foundation, as appears from conversation which he relates as having occurred between him and the architect, Mr. McCall, as follows: ''Mr. McCall says to me, 'Norman, what does it cost to take out

that concrete out of there and haul it away and renew it, that it will be trap rock?' I said, 'it will cost me $530.' He says, 'Sooner than have any trouble, I would prefer to pay one-third of it.' I said 'All right, Mr. McCall, I will stand the other one. Are you satisfied, Mr. Whitmore (the subcontractor) to stand yours?' He said, 'Yes.' " However, nothing further was apparently done in pursuance of that agreement and plaintiff assigns as his reason for not renewing the foundation that "they would not assure me whether they would accept the second one." It is perhaps needless to say that this afforded no legal excuse for his inaction. The written contract was the measure of the rights and obligations of the parties. Defendant was not required to give any additional assurance that he would comply with its terms and plaintiff could not demand it as a prerequisite to the fulfillment on his part of his covenants. He should have put the foundation in proper condition and gone on as required by the contract and the law would have afforded him redress if defendant had refused him justice.

The case, of course, would be different if defendant had repudiated the contract or interfered with the efforts of plaintiff to comply with his agreement. But the only fair inference from the testimony is that plaintiff was not precluded from earning the compensation provided for in said contract. Defendant's attitude was shown by his testimony that he told the architect to stop the contractor "until he could go ahead and do it according to specifications and do it so it would stand. I was willing to do it, and I didn't care when it would be but not if it was going to be any less, so I wanted a good substantial building."

We have not overlooked the familiar rule that applies in cases of nonsuit, but, as we view the matter, there is no substantial evidence here of the default of defendant. The judgment is, therefore, affirmed.

Chipman, P. J., and Hart, J., concurred.